## Margerete Hengen, Appellee, v. Edward P. Skene, Appellant.

### Gen. No. 21,379.

APPEAL AND ERROR, § 1870*—*when merger of interlocutory order in final decree does not discharge appeal bond on former.* Although in a technical, legal sense an interlocutory order for the payment of alimony *pendente lite* in a proceeding for separate maintenance is merged in a final decree granting permanent alimony, yet where as a prerequisite to the allowance of an appeal from the interlocutory order a bond is given conditioned to prosecute the appeal with effect or in the event of affirmance to pay the amount provided by the order, etc., the rights of the obligee against the surety are not affected by such final decree, rendered after the affirmance, although such final decree finds as a fact that no part of the sums provided by the order have been in fact paid, ascertains the amount due, and orders its payment forthwith, since as a practical matter, apart from legal fictions, the final decree merely supplements the interlocutory order, and does not vacate or suspend it, but leaves it unaltered, merely adding the right to an execution.

Appeal from the Municipal Court of Chicago; the Hon. HARRY M. FISHER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed November 15, 1916.

ARCHIBALD CATTELL, for appellant; CLINTON A. STAFFORD, of counsel.

MANIERRE & PRATT, for appellee; CARL H. ZEISS, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On April 9, 1914, a suit in debt by appellee against appellant was begun in the Municipal Court of the City of Chicago. The suit was on an appeal bond, dated July 25, 1911, which bond (signed by Gustave B. Hengen as principal and Edward P. Skene as surety) was

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

in the penal sum of $2,000, and was given to secure a decree for "the payment of one hundred and fifty dollars per month as alimony *pendente lite* and a decree for two hundred dollars, solicitors' fees, said alimony being payable on the first day of each month hereafter until the further order of the court, the first instalment being payable on the first day of August, 1911, and the solicitors' fees being payable on the 15th day of September, 1911."

The condition of the bond was that, "If the said Gustave B. Hengen (principal in the bond) shall duly prosecute his said appeal with effect, and moreover pay the amount of the decree, interest, damages and costs rendered and to be rendered, against him in case the said decree shall be affirmed the obligation to be then void, otherwise to remain in full force and virtue."

The case in the Municipal Court was tried on November 23, 1914, before the court without a jury, and on December 3, 1914, a judgment for $2,000 was entered in favor of the appellee.

The decree in the original case, from which an appeal to the Appellate Court of the First District of Illinois was taken, and in which case the bond in question was given, was affirmed by that court on October 9, 1913. [182 Ill. App. 25.]

On June 24, 1914, a final decree was entered in the Circuit Court. The decree ordered the payment by Gustave B. Hengen (defendant in the separate maintenance suit) of $100 a month as permanent alimony beginning July 1, 1914, and until the further order of the court; the payment of $300 for suit money expended by Margerete Hengen (appellee); the payment of $1,200 as additional solicitors' fees, to be paid on or before July 1, 1914; and also found that no part of the alimony or solicitors' fees awarded by the decretal order of July 14, 1911, and which amounted to $5,450 had

been paid; and decreed that Gustave B. Hengen pay to the appellee that amount forthwith.

The amount $5,450 includes all the alimony and solicitors' fees arising by reason of the decree of July 14, 1911.

The obligation on Hengen to pay both temporary and permanent alimony arose as the result of two orders in the separate maintenance suit. On account of our methods of procedure, Hengen was allowed to appeal from the first order of July 14, 1911, but only on condition that, as a prerequisite, a bond was given. Accordingly, Hengen as principal and appellant as surety gave bond and therein bound themselves to the appellee, the obligation being either to succeed in the appeal or to pay the amount due under the decree.

The appeal was tried, the decree was affirmed, and the obligation on Hengen and appellant to pay remains unfulfilled.

Appellant now contends, although he admits he has never paid what he agreed to pay, that the entry of the decree of June 24, 1914, in which the court finds the entire amount due appellee as alimony and solicitors' fees *pendente lite* and decrees the same to be paid to appellee forthwith, entirely merges and extinguishes the decree of July 14, 1911 (the decree appealed from), and that the decree appealed from being extinguished, the appeal bond given to perfect that appeal thereby becomes of no effect and an action could not be maintained thereon against appellant as surety.

The decree of June 24, 1914, did not conflict with the order of July 14, 1911; it did not extinguish the rights arising by reason of the latter order, it, in truth, only emphasized them. It must be borne in mind that the concrete obligations in their present form arose by operation of law and not by the voluntary personal agreement of the parties themselves. The chancellor made the orders, not the parties. Certainly the appel-

lee is not to blame, nor to suffer because the court, in compliance with the law, pursued the conventional method of first ordering the payment of alimony *pendente lite,* and then, subsequently, in the final decree, fixing the amount that had then accrued, and decreeing, in addition thereto, permanent alimony.

In the instant case the court was at work determining the rights of the parties in the separate maintenance suit and had arrived at the conclusion that the appellee was entitled to a certain amount as alimony *pendente lite* and entered an order accordingly; then an appeal from this order was taken *in medias res,* as it were, a bond was given, the order was sustained in the Appellate Court, and the lower court then proceeded to conclude the litigation and entered a final decree.

Anomalous, indeed, would it be, if the surety could play fast and loose in such a way, and contend that he was bound by the interlocutory decree, but released the moment the court proceeded to end the litigation by entering a final decree.

The appellee has not been guilty of misrepresentation, nor concealment, nor fraud; nor any misfeasance, and the only change which has taken place in the status of either creditor, principal or surety is that the court on June 24, 1914, entered a further order or decree in the same case to the effect that not only is a certain amount of alimony *pendente lite* due, but, in addition, permanent alimony and certain solicitors' fees and costs.

In a technical, legal sense, the order of June 14, 1911, may be said to be merged in the decree of June 24, 1914, but in no way, legal or practical, can it be said to be extinguished.

Viewed as a practical matter (apart from legal fictions), the final decree merely supplemented the preliminary order. The order for the payment of temporary alimony remained unaltered; it was not vacated

nor suspended. The final decree, in fact, merely added the right to an execution.

Many cases have been cited, but upon examination none of them is found to be apposite; they are cases where, in general, the creditor by some voluntary act has changed his contractual status with the principal or surety or both.

We are aware that the grounds of reversal which are urged upon this court were not raised in the lower court; but we have seen fit to consider the merits of the controversy, and on that ground we are of the opinion that the judgment of the lower court should be affirmed.

*Affirmed.*